**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

BILLY DUANE CARD FLESHNER,

        Plaintiff,

vs.

MATTHEW TIEDT et al.,

        Defendants.

No. 15-CV-2033-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*   *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*    *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *5*

    *A.*    *The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *B.*    *Traffic Stop and Detention* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *C.*    *Arrest* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *D.*    *Subsequent Events* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

*VI.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

    *A.*    *Objective Reasonableness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
        *1.*    *Deputy Tiedt* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
        *2.*    *Deputy Shores* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
        *3.*    *Trooper Schaefer* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*
        *4.*    *Trooper Dickinson* . . . . . . . . . . . . . . . . . . . . . . . . . . . *20*
    *B.*    *Actual Injury* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*
    *C.*    *Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *23*

*VII.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *24*

## *I.  INTRODUCTION*

The matters before the court are Defendants Dan Schaefer and James E. Dickinson's (collectively, "State Defendants") "Motion for Summary Judgment" ("State Motion") (docket no. 33) and Defendants Matthew Tiedt and Kyle Shores's (collectively, "County Defendants") "Motion for Summary Judgment" ("County Motion") (docket no. 34).

## *II.  RELEVANT PROCEDURAL HISTORY*

On September 14, 2015, Plaintiff Billy Duane Card Fleshner filed an Amended Complaint (docket no. 15) against Kenneth Wayne Wiley, the County Defendants, Connie Sents, Dan Pickett, Bremer County, Iowa, the State Defendants and Marks Auto Repair and Wrecker Service.  In the Amended Complaint, Fleshner asserted five claims: (1) abuse of process under Iowa law against Wiley; (2) excessive force against the County Defendants and the State Defendants pursuant to 42 U.S.C. § 1983; (3) unlawful search and seizure against the County Defendants and the State Defendants pursuant to 42 U.S.C. § 1983; (4) conspiracy against all then-named Defendants pursuant to 42 U.S.C. § 1983; and (5) a request that the court recommend an investigation by the United States Attorney or convene a federal grand jury investigation of all then-named Defendants pursuant to Federal Rule of Criminal Procedure 6(a).  On September 22, 2015, Pickett, Sents and the County Defendants filed an Answer (docket no. 16).  On March 31, 2016, the State Defendants filed an Answer (docket no. 28).  On December 14, 2015, Fleshner dismissed Marks Auto Repair and Wrecker Service.  *See* Dismissal With Prejudice (docket no. 24) at 1.

On March 4, 2016, the court entered an Order dismissing the search and seizure, conspiracy and grand jury claims.  *See* Mar. 4, 2016 Order (docket no. 26) at 14.  On March 10, 2016, the court entered an Order directing Fleshner to show cause as to why

Wiley should not be dismissed from the instant action, as it appeared to the court that Fleshner's claim against Wiley was barred as a matter of law. *See* Mar. 10, 2016 Order (docket no. 27) at 2. On April 4, 2016, Fleshner responded to the March 10, 2016 Order. *See generally* Response to Court Order to Show Cause (docket no. 29). On April 6, 2016, the court entered an Order dismissing the abuse of process claim against Wiley, noting that the claim as stated in the Amended Complaint is barred as a matter of law. *See generally* Apr. 6, 2016 Order (docket no. 31). Accordingly, the only remaining claim is the excessive force claim against the State Defendants and the County Defendants.

On August 4, 2016, the State Defendants filed the State Motion. On August 5, 2016, the County Defendants filed the County Motion. On August 29, 2016, Fleshner filed a Resistance (docket no. 35). Neither the State Defendants nor the County Defendants have filed a reply and the time for doing so has expired. No party has requested oral argument and the court finds that oral argument is unnecessary. The State Motion and the County Motion are fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over the excessive force claim because it arises under the United States Code. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)). "A dispute is genuine if the evidence is such

that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . .'" *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second and third alterations in original) (internal quotation marks omitted) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving party and affording him all reasonable inferences, the uncontested material facts are as follows.[1]

### A. The Parties

Fleshner is an individual residing in Sioux Falls, South Dakota. Amended Complaint ¶ 2. Tiedt is a Deputy Sheriff with the Bremer County, Iowa Sheriff's Office. County Statement of Facts (docket no. 34-2) ¶ 2. Shores is also a Deputy Sheriff with the Bremer County Sheriff's Office. *Id.* ¶ 5. Dickinson is a Senior Trooper with the Iowa State Patrol. State Statement of Facts (docket no. 33-1) ¶ 1. Schaefer is a Trooper with the Iowa State Patrol. *Id.* ¶ 3.

### B. Traffic Stop and Detention

On December 24, 2014, just prior to 6:00 p.m., Deputy Tiedt responded to a complaint that a dark green Jeep was swerving both within its own lane and into the other lane of traffic on Highway 218 southbound in Bremer County, Iowa.[2] County Statement of Facts ¶ 1. Fleshner was the driver of the Jeep. Deputy Tiedt responded to the complaint, caught up to the Jeep and followed it for a short time, personally observing the vehicle weaving within its own lane of traffic, touching both the fog line and center line once. *See* County Appendix (docket no. 34-3) at 8. Deputy Tiedt then initiated a traffic stop by activating his red and blue emergency warning lights. County Statement of Facts ¶ 3. Fleshner did not immediately pull over when Deputy Tiedt activated his siren.[3] *Id.*

---

[1] The court is also mindful that Fleshner is appearing pro se, which requires the court to liberally construe his pleadings. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014).

[2] The complaint was initiated by Wiley, who reportedly observed Fleshner swerving on the road.

[3] This can been seen in the dash camera footage from Deputy Tiedt's patrol car.

(continued…)

Deputy Tiedt continued to follow Fleshner, periodically activating his siren, for approximately two minutes before Fleshner pulled off the highway and into a gas station parking lot.  The video from Deputy Tiedt's dash camera shows that the shoulder of the road was clear and nothing was apparently preventing Fleshner from pulling over sooner.[4]

Deputy Tiedt approached the Jeep but could not see into the vehicle because of its heavily-tinted windows.  County Statement of Facts ¶ 6.  Deputy Tiedt initially approached the Jeep on the passenger side and requested that Fleshner roll down the window.  Fleshner rolled down the window approximately two inches to speak with Deputy Tiedt.  *Id.*  Deputy Tiedt requested that Fleshner further roll down his window but Fleshner refused.  *Id.*  Deputy Tiedt requested that Fleshner provide him with his identification but Fleshner refused, instead asking why Deputy Tiedt had initiated the traffic stop.  *Id.* ¶ 7.  Deputy Tiedt informed Fleshner that he received a complaint that the Jeep was swerving within its own lane and into the other lane of traffic and that he had personally observed Fleshner swerving within his own lane and touching the fog line—indicating that Fleshner may be intoxicated.  Deputy Tiedt again requested that Fleshner provide him with identification, but Fleshner refused, stating that he did not have to provide it.  County Statement of Facts ¶ 7.

Deputy Shores also responded to the complaint after hearing Deputy Tiedt report over the police radio that Fleshner did not stop after Deputy Tiedt activated his emergency lights.  County Appendix at 10.  Upon arriving at the gas station, Deputy Tiedt apprised Deputy Shores of the situation.  County Statement of Facts ¶ 8.  The officers approached the Jeep again and requested identification.  Fleshner again refused, stating that he did not

---

[3](…continued)
*See* County Appendix at 70.

[4] According to Fleshner, he chose not to pull over sooner because he believed it to be safer to pull over near the gas station, so that Deputy Tiedt would not have to walk near the highway.

have to provide it and that Deputy Tiedt was lying when he stated that Fleshner was required to show his identification. *Id.* ¶ 10. Deputies Tiedt and Shores briefly conferred regarding what to do next and Deputy Shores suggested ordering Fleshner out of the vehicle for failure to obey a lawful order. Deputy Tiedt then approached the driver's side window and ordered Fleshner out of the vehicle. Fleshner refused. County Statement of Facts ¶ 11. Deputies Tiedt and Shores then retreated from the Jeep at approximately 6:24 p.m., and Deputy Shores requested assistance from the Iowa State Patrol. County Statement of Facts ¶ 12; State Statement of Facts ¶ 1. Trooper Dickinson responded to Deputy Shores's call and then contacted Trooper Schaefer. State Statement of Facts ¶¶ 1, 3.

Upon their arrival at the gas station, Deputy Tiedt gave Troopers Dickinson and Schaefer a short summary of what had transpired during the initial stop and ensuing detention. The four law enforcement officers again approached the Jeep and Deputy Tiedt again ordered Fleshner out of his vehicle. *Id.* ¶ 5. Deputy Tiedt warned Fleshner that, if he did not cooperate, the officers would break the window of the Jeep and remove Fleshner from the vehicle. *Id.* Fleshner continued to refuse to provide identification or exit the vehicle. *Id.* While Deputy Tiedt spoke to Fleshner, Trooper Dickinson retrieved devices known as "stop sticks" from his patrol car and placed them behind the Jeep's wheels to prevent the vehicle from leaving. *Id.* ¶ 6.

Trooper Schaefer also spoke with Fleshner and ordered him to present his identification or he would be arrested for interference with official acts. *See id.* ¶ 7. Trooper Schaefer also drew his taser and trained the laser sight on Fleshner's person inside the vehicle. *Id.* Fleshner continued to refuse to follow the officers' commands. Trooper Dickinson then requested that Fleshner comply with the officers. *Id.* ¶ 8. When Fleshner again refused, Trooper Schaefer attempted to use a "window punch" device to break the front passenger side window. *Id.* ¶ 9. Trooper Schaefer struck the window once but it

did not break.  *Id.* ¶ 9.  Before he could strike the window a second time, Fleshner exited the vehicle from the driver's side.  *Id.* ¶ 10.  At that time, the officers placed Fleshner under arrest.

### C. Arrest

As Fleshner exited the vehicle, Deputy Tiedt reached for Fleshner's left arm. County Statement of Facts ¶ 18.  Trooper Schaeffer approached Fleshner from the front of the vehicle and grabbed Fleshner's right arm.[5]  Trooper Schaefer directed Fleshner to get on the ground.  *Id.*  Fleshner did not comply and Trooper Schaefer again directed Fleshner to get on the ground.  Instead of complying, Fleshner attempted to back away from the officers and continued to resist even as the officers attempted to force him to the ground.  *Id.*  At that time, Trooper Schaefer applied what he referred to as a "knee strike" to Fleshner—Trooper Schaefer maintains that his knee strike struck Fleshner's thigh but Fleshner claims that the knee strike struck his groin.  *See* County Appendix at 12 (Trooper Schaefer's incident report from the traffic stop and arrest); Resistance at 14.  At the same time, Deputy Tiedt swept Fleshner's left leg from under him in an attempt to bring him to the ground.  State Statement of Facts ¶ 11.

The officers successfully brought Fleshner to the ground and attempted to handcuff him.  Troopers Schaeffer and Dickinson were on Fleshner's right side and Deputies Tiedt and Shores were on Fleshner's left side.  Trooper Schaefer and Deputy Shores kneeled on Fleshner's shoulders while Trooper Dickinson and Deputy Tiedt attempted to handcuff Fleshner.  The officers directed Fleshner to place his hands behind his back and to stop resisting.  County Statement of Facts ¶ 19.  While the law enforcement officers maintain that Fleshner continued to resist being handcuffed once he was placed on the ground,

---

[5] This can been seen in the dash camera footage from Trooper Schaefer's patrol car. *See* County Appendix at 71.

Fleshner states that he "did not resist attempts to be handcuffed" and voluntarily placed his arms behind his back. *See id.*; State Statement of Facts ¶ 11; Resistance at 13.

After Fleshner was handcuffed, Trooper Dickinson and Deputy Tiedt arose and Deputy Shores removed his knee from Fleshner's person. Trooper Schaefer remained on Fleshner's shoulder and asked what weapons Fleshner had in the vehicle. Fleshner refused to answer and stated that the officers did not have his permission to search the vehicle. At that time the officers assisted Fleshner into a sitting and then standing position. From the time that Fleshner initially exited the Jeep to the time that the officers handcuffed him and assisted him in standing back up, approximately one minute and twelve seconds elapsed. Fleshner had remained on the ground for approximately one minute. *See* County Statement of Facts ¶ 20.

As a result of the arrest, Fleshner sustained "a bruised and scraped cheek on the right side of his face that was tender for about a week . . . ." County Appendix at 54. "He also suffered scrapes and bruising on his right hand from being pinned under his body" while the officers attempted to handcuff him. *Id.* Like the injuries to his face, the scrapes and bruising on Fleshner's hand lasted approximately one week. *Id.* Fleshner also sustained fingertip-sized bruises on his right arm and some tenderness on his upper right thigh from the knee strike employed by Trooper Schaefer. *Id.*; *see also* State Appendix (docket no. 33-3) at 17-19 (photographs of Fleshner's face, hands and arm). Finally, Fleshner alleges that "his neck was giving him issues more than typical" in the time period following the incident. County Appendix at 54. Fleshner did not seek treatment for any of the injuries that he sustained as a result of the incident. *See id.* at 48-49.

### D. Subsequent Events

After being taken into custody, Fleshner continued to refuse to provide the officers with identification—only stating that his name was "Bill." State Statement of Facts ¶ 13. The officers placed Fleshner in Deputy Tiedt's patrol car. *Id.* Troopers Dickinson and

Schaefer conducted an inventory search of the vehicle and discovered a South Dakota driver's license bearing Fleshner's name "wedged under the center console of the vehicle." *Id.* ¶ 14. During the inventory of the vehicle, the Troopers recovered and inventoried several firearms. *Id.* ¶ 15.

Fleshner was subsequently charged with state charges of carrying weapons, interference with official acts, darkened windows, no valid driver's license and failure to yield to an emergency vehicle. *See id.* ¶ 17; County Statement of Facts ¶ 29; State Appendix 20-33. Fleshner was acquitted of the carrying weapons charges after a jury trial in the Iowa District Court for Bremer County. *See* State Appendix at 20-21. Fleshner was convicted of all of the other charges. *See id.* at 22-33.

## VI. ANALYSIS

The State Defendants argue that summary judgment is appropriate because the facts demonstrate that "Fleshner's [c]onstitutional rights were not violated" and that Troopers Dickinson and Schaefer "are entitled to qualified immunity." State Motion at 1. The County Defendants argue that summary judgment is appropriate because "[t]he force, manner, and level that each County Defendant applied to effect the arrest of Fleshner was objectively reasonable," Fleshner has failed to assert an "actual injury" and Deputies Tiedt and Shores "are entitled to qualified immunity." County Motion at 2. Fleshner disputes that the officers are entitled to summary judgment because he challenges several of the factual allegations bearing on the amount and type of force used in his arrest. *See* Resistance at 13-15. Fleshner also appears to argue that the doctrine of qualified immunity should not apply in the instant action because it is not a creature of statutory origin. *See id.* at 11-12. The court shall first address the type and amount of force used, then address actual injury and finally discuss qualified immunity.

### *A. Objective Reasonableness*

A § 1983 claim alleging excessive force in making an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). This inquiry seeks to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interest" against the "countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Even "reasonable applications of force may well cause pain or minor injuries with some frequency." *Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015) (quoting *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011)). However, the amount of force appropriate in a given circumstance depends on the specific facts of each situation, and the reasonableness standard under the Fourth Amendment is incapable of "precise definition or mechanical application." *Graham*, 490 U.S. at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

The reasonableness standard is an objective one. "Courts should not consider the officers' subjective motivations when determining whether their use of force was reasonable under the Fourth Amendment." *Schoettle v. Jefferson Cty.*, 788 F.3d 855, 859 (8th Cir. 2015). Additionally, "[c]ourts should not allow 'the 20/20 vision of hindsight' to cloud 'the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham*, 490 U.S. at 396-97). "It may appear, in the calm aftermath, that an officer could have taken a different course, but [courts] do not hold the police to such a demanding standard." *Aipperspach v. McInerney*, 766 F.3d 803, 806 (8th Cir. 2014) (quoting *Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012)). Instead, "[t]he dispositive question is whether the

officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied." *Grider*, 785 F.3d at 1252. Courts must consider the facts and circumstances as known and presented to the officer and may consider the severity of the crime at issue, whether the suspect posed an immediate threat of injury to the officers or the public at large and whether the suspect was in flight or actively resisting arrest. *See Williams v. Holley*, 764 F.3d 976, 980 (8th Cir. 2014); *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012); *Molina-Gomes v. Welinski*, 676 F.3d 1149, 1152 (8th Cir. 2012).

A mere *de minimis* use of force is insufficient to support a claim for excessive force in arrest. *See Chambers*, 641 F.3d at 906. While it is true "that evidence of only *de minimis* injury [does not] necessarily foreclose[] a claim of excessive force under the Fourth Amendment," courts are mindful that "[t]he degree of injury is certainly relevant insofar as it tends to show the amount and type of force used." *Id.* The Eighth Circuit Court of Appeals has recognized that "it may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding *de minimis* use of force." *Id.* However, while degree of injury is a relevant consideration, the proper focus is "whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force is used." *Id.*

Finally, "[l]iability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." *Smith v. City of Minneapolis*, 754 F.3d 541, 547 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805-06 (8th Cir. 2010)). "An officer may be held liable only for his or her own use of excessive force." *Id.* (quoting *Smith v. Kan. City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009)). Therefore, the court shall address each Defendant's use of force separately.

## 1.    Deputy Tiedt

The County Defendants argue that Deputy Tiedt did not use excessive force when arresting Fleshner because, "considering Fleshner's conduct, including erratic driving and the short pursuit, his more than [twenty] minutes of resistance before exiting his vehicle, tensing of his arms, attempts to pull away, his refusal to obey commands to get on the ground and stop resisting, and the struggle on the ground," the record conclusively demonstrates that the amount of force Deputy Tiedt used to apprehend Fleshner was objectively reasonable.  Brief in Support of the County Motion (docket no. 34-1) at 7.  Fleshner generally argues that he "neither attempted to flee nor resisted" the arrest and that he did not "pose a threat to anyone."  Resistance at 8-9.  He further argues that he "did not pull away" from the officers upon exiting the vehicle.  *Id.* at 13.

Even viewing the evidence in the light most favorable to Fleshner, the record conclusively demonstrates that the amount of force used by Deputy Tiedt was objectively reasonable given the circumstances presented to him.  The Eighth Circuit has recognized that traffic stops carry with them "inherent danger".  *See United States v. Shranklen*, 315 F.3d 959, 962 (8th Cir. 2003).  Given the facts known to Tiedt at the time that Fleshner exited the Jeep—that he traveled over a mile after Tiedt had initiated the traffic stop; refused to provide identification or crack the window more than a few inches; the Jeep's windows were tinted, blocking the majority of the vehicle's contents from view; and he was being generally uncooperative—officer safety concerns made it objectively reasonable to use the force necessary to swiftly place Fleshner under arrest.  *See Ransom v. Grisafe*, 790 F.3d 804, 812 (8th Cir. 2015) (noting that facts providing law enforcement officers with "an objectively reasonable concern for [their] safety or suspicion of danger" authorizes the use of some force in apprehending a suspect (alteration in original) (quoting *Williams v. Decker*, 767 F.3d 734, 741 (8th Cir. 2014))).

Deputy Tiedt grasped Fleshner's left arm or wrist, swept out his left leg and assisted in handcuffing Fleshner. Such use of force is objectively reasonable where a suspect is resisting arrest. *See, e.g.*, *McGruder v. Heagwood*, 197 F.3d 918, 920 (8th Cir. 1999) (authorizing the forcible removal of a suspect from a vehicle where officers reasonably believed that the suspect was resisting arrest). Although Fleshner argues that he was not resisting and that he was, in fact, complying with the officers' commands, *see* Resistance at 4, he has not pointed to any evidence in the record suggesting that it was unreasonable for the officers to believe that he was resisting arrest. Instead, the video evidence of record clearly demonstrates Fleshner recoiling from Trooper Schaefer and Deputy Tiedt when they attempted to secure him upon his exit from the vehicle. An officer faced with such conduct after Fleshner's lengthy non-cooperation, could reasonably believe that Fleshner was attempting to resist arrest, justifying the use of some degree of force to effectuate the arrest. *See Capps v. Olson*, 780 F.3d 879, 885 (8th Cir. 2015) ("An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment." (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012))). Deputy Tiedt's application of a single, swift leg sweep to facilitate the arrest was objectively reasonable in these circumstances. *See Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (noting that a suspect's resistance to law enforcement commands to exit a vehicle justifies the forcible removal and handcuffing of the suspect by law enforcement); *see also Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (finding, on facts similar to these, that officers were justified in their use of force where the passenger of a vehicle refused to exit the vehicle, refused to comply with officers' demands and where officers could reasonably believe that the suspect was intoxicated or fleeing because, "[w]hen a suspect is passively resistant, somewhat more force may reasonably be required" than would otherwise be appropriate).

Therefore, the court finds that Fleshner has not demonstrated the existence of a genuine dispute of material fact regarding whether Deputy Tiedt's use of force was objectively reasonable given the circumstances. Even viewing the evidence in the light most favorable to Fleshner, the record is devoid of any evidence suggesting that Deputy Tiedt used more force than was objectively reasonable. Accordingly, the court shall grant the County Motion with regard to Deputy Tiedt.

### 2. *Deputy Shores*

The County Defendants argue that Deputy Shores did not use excessive force in arresting Fleshner because "Shores'[s] actions were limited to an assisting role, and only followed Fleshner struggling on the ground with [Deputy] Tiedt and [Trooper] Schaefer, while they attempted to handcuff him." Brief in Support of the County Motion at 8. Fleshner alleges that "Deputy Shores used his left hand to force . . . Fleshner's head into the pavement" while Fleshner was on the ground being handcuffed. County Appendix at 64.

The court finds that, even assuming that Fleshner's factual allegation regarding Deputy Shores's use of force is true, the record demonstrates that Deputy Shores's limited use of force was objectively reasonable. Deputy Shores obtained information from Deputy Tiedt upon arriving on the scene that Fleshner was being uncooperative and resisting Deputy Tiedt's requests for identification. *See* County Statement of Facts ¶¶ 6-8. Deputy Shores was entitled to rely on this information. *See Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) (noting that, for purposes of determining § 1983 liability, whether law enforcement officers' actions are constitutionally unreasonable "must take into account the settled principle that law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable"). Deputy Shores then personally observed Fleshner's unwillingness to comply with his, Deputy Tiedt's and the State Defendants' orders to provide identification and exit the vehicle. He also

personally observed Deputy Tiedt and Trooper Schaefer's struggle to get Fleshner onto the ground.

These facts make it objectively reasonable for Deputy Shores to use minimal force to secure Fleshner on the ground once the other officers brought him into a prone position. Given Fleshner's conduct throughout the entire incident, Deputy Shores could have reasonably believed that Fleshner was going to continue or escalate resisting once he was on the ground. Deputy Shores also reported that Fleshner would not bring his hands from underneath his body once on the ground. County Appendix at 10 (Deputy Shores's incident report). Fleshner himself admits that one of his arms was under his body and that he lifted his body off of the ground twice in an attempt to free the arm to present it to the officers to be cuffed. *See* Amended Complaint ¶ 101. However, even taking that fact as true, Deputy Shores could not be aware of Fleshner's subjective reason for his movements and it would still be reasonable to believe that Fleshner was continuing to be uncooperative with their commands or resisting arrest. Therefore, use of force to subdue him and effectuate the arrest was warranted. *See Capps*, 780 F.3d at 885. Furthermore, Deputy Shores's use of force was brief. The video evidence demonstrates that Shores only applied his weight to Fleshner's shoulder for the amount of time necessary to secure him in handcuffs and he promptly removed himself thereafter. In short, Fleshner has not pointed to any facts in the record, nor made any factual allegations, which would generate a genuine dispute of material fact regarding whether Deputy Shores's use of force was objectively reasonable. Therefore, the court finds that Deputy Shores's actions were constitutionally sound. Accordingly, the court shall grant the County Motion with respect to Deputy Shores.

### 3. *Trooper Schaefer*

The State Defendants argue that Trooper Schaefer's use of force was objectively reasonable because he was "confronted with an unknown person who refused to provide

any identification, refused to cooperate in any way, and was driving a vehicle with illegally tinted windows which made it impossible for [Trooper Schaefer] to know what may be in the vehicle that could pose a danger to [him]." Brief in Support of the State Motion (docket no. 33-2) at 9. Fleshner alleges that Trooper Schaefer "grabbed [him] by the head and neck seconds after [he] was stepping out" of the Jeep as ordered and that Trooper Schaefer "struck [him] in the groin" before taking him to the ground. Resistance at 14. Fleshner also states that Trooper Schaefer pointed the laser sight of his taser at Fleshner's chest throughout the incident until Fleshner exited the vehicle. *Id.*

Upon his arrival to the gas station, the County Defendants informed Trooper Schaefer of what had transpired prior to his arrival. Therefore, before even making contact with Fleshner, Trooper Schaefer was aware that Fleshner had failed to yield to Deputy Tiedt's flashing emergency lights for over a mile before pulling over, failed to provide identification at the County Defendants' requests and was being generally uncooperative. He was entitled to rely on this information when interacting with Fleshner. *See Doran*, 409 F.3d at 965. Trooper Schaefer also personally observed Fleshner's recalcitrance when Fleshner refused to follow Trooper Schaefer's own directives to roll the Jeep's passenger side window completely down and provide Deputy Tiedt with identification. *See* State Statement of Facts ¶ 7.

During this time, Trooper Schaefer "trained the laser sight of [his] electronic control device on [Fleshner's] person, so he could see it." County Appendix at 12. There is no evidence in the record to suggest that Trooper Schaefer deployed the taser at any time during the incident and the video evidence shows that Trooper Schaefer holstered the taser by the time the arrest was actually made. Fleshner has not argued that the mere drawing of a taser and implied threat of its use constitutes excessive force. However, out of an abundance of caution, the court shall consider this issue. The court finds that, even if the mere threat of use of a taser can be considered force, Trooper Shaefer's actions in drawing

the taser and pointing it at Fleshner were objectively reasonable. Fleshner was refusing to provide his identification, refused to exit the vehicle or roll the windows down, preventing the officers from observing what was inside the vehicle. A reasonable officer in Trooper Schaefer's position could have believed drawing a taser—and not deploying it—was warranted given the unpredictable nature of the interaction. *See Policky v. City of Seward, Neb.*, 433 F. Supp. 2d 1013, 1022 (D. Neb. 2006) (finding that an officer's "precautionary" drawing of a taser on a suspect whom he believed to be combative and who may have been holding something in his hand was objectively reasonable and amenable to summary judgment); *Clark v. Rusk Police Dep't*, No. 6:07CV340, 2008 WL 4179322, at *3 (E.D. Tex. Sept. 8, 2008) (finding that dismissal of an excessive force claim was appropriate where an officer draws, but does not discharge, a taser on a suspect who refused to exit his vehicle despite multiple commands to do so). Therefore, the court finds that Trooper Schaefer's drawing of his taser was objectively reasonable.

According to Trooper Schaefer's dash camera footage, upon traversing the Front of the Jeep, Trooper Schaefer reached for and grasped Fleshner almost immediately upon his exit from the vehicle. However, the dash camera footage also demonstrates that Trooper Schaefer did not attempt to bring Fleshner down to the ground forcefully until Fleshner recoiled. As with the court's discussion regarding Deputy Tiedt, a reasonable officer could view such an action as an attempt to evade or resist arrest. *See* Part IV.A.1 *supra*. Therefore, Trooper Schaefer's decision to utilize some force, or elevate the amount of force being used, was objectively reasonable given the circumstances. *See Capps*, 780 F.3d at 885. At that point, none of the officers knew whether Fleshner had a weapon on his person or whether he recoiled in an attempt to break free from the officers' grasp to obtain a weapon from his vehicle. The use of some force to efficiently secure a suspect out of concerns for officer safety is objectively reasonable under the Fourth Amendment. *See Ransom*, 790 F.3d at 812; *Wertish*, 433 F.3d at 1066-67.

Trooper Schaefer only administered the knee strike after Fleshner physically resisted Trooper Schaefer's and Deputy Tiedt's attempt to bring him to the ground. It is objectively reasonable for an officer to employ a knee strike in an attempt to bring an arrestee under control during the course of an arrest where the arrestee is resisting. *See Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) ("When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot."); *see also Coleman v. Rieck*, 253 F. Supp. 2d 1101, 1107 (D. Neb. 2003) (finding that the use of knee strikes against a subdued and cooperative suspect was objectively unreasonable). Therefore, Trooper Schaefer's use of the knee strike was constitutional.

Additionally, there is no evidence in the record to support Fleshner's contention that Trooper Schaefer kneed him in the groin. Fleshner did not complain of a groin injury following the incident. *See* County Appendix at 54. Instead, he claims an upper-leg injury that is fully consistent with Trooper Schaefer's account of the arrest. *See id.*; State Statement of Facts ¶ 11 ("Trooper Schaefer used his knee to strike the driver's upper leg once . . . ."). The video evidence does not clearly show where Trooper Schaefer's single knee strike made contact with Fleshner. However, even if Trooper Schaefer did strike Fleshner near the groin, Trooper Schaefer employed the knee strike in effectuating the arrest by bringing a resisting suspect to a prone position. Any proximity to Fleshner's groin was unintentional. Fleshner has not pointed to any evidence in the record to dispute this characterization, and his factual allegations do not suggest that such a strike to his groin was malicious or intentional. Therefore, the court views the single knee strike as objectively reasonable. *See Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) (holding that, where "[t]here [was] no evidence that [an officer] intentionally targeted [a suspect] for the application of pepper spray," the application of pepper spray to the suspect was not unconstitutional); *but see Johnson v. District of Columbia*, 528 F.3d

969, 974-75 (D.C. Cir. 2008) (holding that an officer repeatedly kicking a submissive suspect in the groin violated the Fourth Amendment and viewing strikes to the groin with heightened suspicion because such strikes are "the classic example of fighting dirty").

Finally, Trooper Schaefer's minimal use of force in assisting Deputy Tiedt in handcuffing Fleshner was objectively reasonable. As the court noted in its discussion regarding Deputy Shores, it would be reasonable for an officer in Trooper Schaefer's position, having witnessed Fleshner's refusal to follow the officers' directives and having just assisted in forcibly bringing Fleshner to the ground, to view Fleshner's attempts to raise his body from the ground as further attempts to resist. *See* Part IV.A.2 *supra*. Trooper Schaefer remained on top of Fleshner for less than a minute and attempted to elicit information regarding whether Fleshner had any weapons on his person or in the vehicle. It was reasonable to maintain control of Fleshner while Trooper Schaefer was pursuing that line of questions, and he promptly assisted Fleshner in sitting and then standing soon thereafter. Fleshner has neither argued nor pointed to any evidence in the record suggesting that Trooper Schaefer's perception that Fleshner was not complying with orders and resisting arrest was objectively unreasonable. Therefore, Fleshner has not demonstrated the existence of a genuine dispute of material fact regarding whether Trooper Shaefer's use of force was objectively reasonable. Accordingly, the court shall grant the State Motion with regard to Trooper Schaefer.

### 4. *Trooper Dickinson*

Like Deputy Shores, Trooper Dickinson's use of force in the arrest was limited to the time that Fleshner was on the ground. In fact, Fleshner's only factual allegation against Trooper Dickinson during the course of the arrest is that Trooper Dickinson "struck or [tased]" him multiple times in his leg. County Appendix at 54. This allegation is flatly contradicted by the video evidence of record, which conclusively demonstrates that Trooper Dickinson merely assisted the other officers in placing Fleshner in handcuffs. In

fact, Fleshner has pointed to no evidence in the record that Trooper Dickinson ever drew his taser. Trooper Dickinson was informed of Fleshner's noncompliance with the County Defendants upon his arrival at the scene and was entitled to rely on that information. *See Doran*, 409 F.3d at 965. Trooper Dickinson then personally observed Fleshner's continued refusal to obey law enforcement officers' commands and, like Deputy Shores, observed Trooper Schaefer's and Deputy Tiedt's struggle to bring Fleshner to the ground.

For the same reasons that the court finds that Deputy Shores's use of force was objectively reasonable, the court finds that Trooper Dickinson's use of force was objectively reasonable. Both Deputy Shores and Trooper Dickinson employed minimal force to subdue and secure Fleshner, whom they could have reasonably believed was attempting to evade or resist arrest. *See Capps*, 780 F.3d at 885. Both Deputy Shores's and Trooper Dickinson's use of force was minimal and temporally confined to the shortest amount of time necessary to secure Fleshner's arrest. Fleshner has failed to demonstrate the existence of a genuine dispute of material fact regarding the objective reasonableness of Trooper Dickinson's use of force. Therefore, the court finds that Trooper Dickinson's actions were constitutional. Accordingly, the court shall grant the State Motion with respect to Trooper Dickinson.[6]

---

[6] Additionally, as to all Defendants, the court's conclusion is bolstered by the extent of Fleshner's injuries. *See Chambers*, 641 F.3d at 906. Although the extent of injury is not dispositive, it is nevertheless instructive. The minor bruising and scrapes on Fleshner's arms, hands and face, as well as some temporary soreness in his leg and back, constitute *de minimis* injuries. *See Wertish*, 433 F.3d at 1067. These injuries clearly indicate that the officers' use of force was correspondingly *de minimis*. *See Chambers*, 641 F.3d at 906 (noting that "it may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding *de minimis* use of force"). Therefore, the court finds that the nature of the injuries suffered by Fleshner supports Defendants' contention that the force used was objectively reasonable.

## B.  Actual Injury

The County Defendants also argue that "Fleshner has presented no evidence to show he sustained an actual injury."  Brief in Support of the County Motion at 12.  The County Defendants cite to Fleshner's failure to seek medical treatment for the injuries suffered by Fleshner as proof that he suffered no "actual" injury.  *Id.*  "An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment."  *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005) (quoting *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995)).  An "actual injury" is a "minimum level of injury" that "is less than 'significant injury.'"  *Dawkins*, 50 F.3d at 535 (citing *Cummings v. Malone*, 995 F.2d 817, 822-23 (8th Cir. 1993)).  The Eighth Circuit has held that "a facial laceration," bruised knees, "post traumatic stress disorder" and a "single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf" can each individually amount to an "actual injury."  *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (citing *Dawkins*, 50 F.3d at 535); *but see Hanig*, 415 F.3d at 824 (appearing to require a plaintiff complaining of injury stemming from handcuffing to demonstrate "long-term" or "more permanent" injury to satisfy the "actual injury" requirement).

Here, it is true that Fleshner has not sought medical treatment for any of his alleged injuries.  *See* County Appendix at 48-49.  However, the types of injuries that Fleshner suffered in the instant action are so similar to those that constituted "actual" injuries in *Dawkins* and *Lambert* that the court finds that there exists, at least, a genuine dispute of material fact regarding whether Fleshner has suffered an actual injury.  The court is further guided by the notion that an injury need not be "substantial" to be "actual" for purposes of the Fourth Amendment.  Accordingly, the court finds that summary judgment on these grounds is unavailable.

### C. Qualified Immunity

"Qualified immunity shields government officials from liability in a § 1983 action unless the officials conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Defendants bear the burden of demonstrating that they are entitled to qualified immunity, while plaintiffs receive the benefit of all reasonable factual inferences. *See Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016).

> The [elements] for whether an officer is entitled to qualified immunity are: (1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful.

*Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). When considering qualified immunity, courts may consider these elements in either order. *Id.*

However, because the court has determined that the officers clearly did not use more force than was constitutionally permissible under *Graham*, the court need not reach the qualified immunity analysis. *See Aipperspach*, 766 F.3d at 806 n.2 (noting that, unless "the *Graham* standard was clearly established," "'the sometimes hazy border between excessive and acceptable force' may require separate analysis of qualified immunity as well as the Fourth Amendment objective reasonableness standard under *Graham*"). Therefore, the court declines to address whether the officers are entitled to qualified immunity[7] and

---

[7] However, if the court were to reach the question, it would conclude that the officers are entitled to qualified immunity because, for the reasons stated above, they did not violate Fleshner's constitutional right to be free from excessive force, even though such right is clearly established under the Constitution. *See Carter v. Huterson*, ___ F.3d ___, ___, 2016 WL 4174459, at *3 (8th Cir. Aug. 8, 2016) ("The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition

(continued...)

further declines to address Fleshner's contention that the qualified immunity doctrine should be abrogated or has no statutory basis.

## VII. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1)    The State Motion (docket no. 34) is **GRANTED**; and

(2)    The County Motion (docket no. 33) is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants. The trial date is **VACATED**.

**IT IS SO ORDERED.**

**DATED** this 21st day of September, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[7](…continued)
against unreasonable seizures of the person." (quoting *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009))).